

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Chas. E. Reagan
District Attorney
Falls County
Marlin, Texas

Dear Sir:

Opinion No. O-1108
Re: County Board of School
Trustees changing the
boundary between two
common school districts.

This is in answer to your letter in which you ask our opinion on whether or not the boundary line between McCollum Common School District and Glade Chapel Common School District, both in Falls County, has been legally changed.

You state that one of these school districts was created and its boundaries established in 1893, and the other one in 1895; and that in 1895 there was duly entered a Commissioners' Court order giving the boundaries of both districts by metes and bounds. You quote the metes and bounds description at great length. You then state that in 1932 the County Board of School Trustees of Falls County employed Mr. Van Harris "to bring the field notes of all of the districts of the county down to date as of that year", and that Mr. Harris compiled a new set of field notes for each school district and recorded them in a book called "Record of Schools"; and you quote the new field notes made by Mr. Harris for the districts concerned in this discussion. You then explain that no error in the new field notes was discovered at the time they were compiled, but in 1939 it was discovered that the new field notes made a change in the boundary line between McCollum Common School District and Glade Chapel Common School District so that six or seven hundred acres of land was taken from the latter district and added to the McCollum district. Your letter continues as follows:

"The minutes of the County Board of
Trustees of Nov. 5, 1932, page 209 read

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

as follows: 'The County Board met in called meeting Nov. 5 with all members present. Boundaries of all school districts in the county were re-established and redefined according to the field notes recorded in Book 1, District Record of Schools, on pages ----.' The minutes are signed by Miss Lois Souther as County School Superintendent and Secretary of the Board, but are not signed by the president of the board. . .

"The boundary lines given by these field notes correspond with those given by the field notes of 1895 except on the N. E. corner of the district where six or seven hundred acres of land was taken from the Glade Chapel District and added to the McCollum District. However, even though the field notes of 1932 show a change in the N. E. boundary line, the line given by the field notes of 1895 has always been used as the correct boundary. In fact no one in either the Glade or McCollum Districts knew of any change having been made until recently. A few weeks past the trustees of the McCollum District read the 1932 field notes and noticed the change in the N. E. boundary line, and are now contending for the additional territory.

" . . . The only record that shows any change is the field notes of 1932, compiled by Mr. Harris. The McCollum trustees contend that the County Board made the change in 1932 when they approved the field notes compiled by Mr. Harris. The Glade Chapel trustees contend that the minutes of the Commissioners' Court and the county board do not show a change had ever been legally made and that the county board did not have the authority to make the change in 1932 even if that was their intention; . . .

"Under these conditions, which, in your opinion, is the correct boundary

line between these two districts; the
one given by the original field notes
of 1895 or the one given by the field
notes of 1932 as compiled by Mr. Harris
and approved by the County Board of Trus-
tees?"

We have omitted the metes and bounds descrip-
tions from the Commissioners' Court records of 1895, and
from the "Record of Schools" of 1932, which you quote at
great length, because we do not think they are material
in arriving at our answer to your question.

In 1932 there were two statutes in effect that
control the answer to this question, and those were Section
2 of House Bill No. 220, Forty-first Legislature, First
Called Session (Article 2742e), and Section 1 of House Bill
No. 25, Forty-first Legislature, First Called Session (Ar-
ticle 2742f). House Bill No. 25 has since been amended,
which is immaterial to this discussion.

Section 2 of said House Bill No. 220 (Article
2742e), in 1932, read as follows:

"Sec. 2. That on and after the pass-
age of this Act the County Board of School
Trustees in any county in this State shall
have authority and full power to create
Common School Districts, to subdivide dis-
tricts, and to change boundary lines of
any or allCommon School Districts leg-
ally coming under the jurisdiction of the
County Board of School Trustees, subject
to the supervision of the District Court
having jurisdiction over the county where
the County Board is appointed or elected;
provided that before any changes may be
made in boundary lines of school dis-
tricts the trustees of the Common School
Districts affected shall be notified to
appear before the County Board for a hear-
ing, and after said hearing, or the date
set for said hearing, the County Board of
Trustees may pass such order or orders as
will carry out the provisions of this Act;
provided, further, that the trustees of
the districts affected may appeal from the
decision of the County Board to the Dis-
trict Court."

Honorable Chas. E. Reagan, Page 4

Section 1 of said House Bill No. 25 (Article 2742f), in 1932, read as follows:

"In each county of this State the County Board of Trustees shall have the authority, when duly petitioned as herein provided, to detach from and annex to any school district territory contiguous to the common boundary line of the two districts; provided the Board of Trustees of the district to which the annexation is to be made approves, by majority vote, the proposed transfer of territory and provided, further, that where the territory to be detached exceeds ten per cent (10%) of the entire district the petition must be signed by a majority of the trustees of said district in addition to a majority of the qualified voters of the territory to be detached. The petition shall give the metes and bounds of the territory to be detached from the one and added to the other district and must be signed by a majority of the qualified voters residing in the said territory so detached. Upon receipt of the said petition, duly signed, and upon notice of the approval of the proposed annexation by the Board of Trustees of the district to which the territory is to be added, the County Board of Trustees shall pass an order transferring the said territory and redefining the boundaries of the districts affected by said transfer, the said order to be recorded in the Minutes of the County Board of Trustees. Provided that no school district shall be reduced to an area of less than nine square miles."

It will be noticed that in 1932 House Bill No. 220 (Article 2742e) specifically provided that "before any changes may be made in boundary lines of school districts the trustees of the Common School Districts affected shall be notified to appear before the County Board for a hearing." We think that it was absolutely necessary that this provision be complied with before the changing of the boundary line between two common school districts could be

valid, and this view is supported by the opinion in the case of Board of School Trustees of Young County vs. Bullock Common School District (Comm. App.), 55 S. W. (2d) 538, decided December 22, 1932, in which the above quoted House Bill No. 220, and House Bill No. 25 are discussed, and in which the Court said:

"We are in accord with the holding of the Court of Civil Appeals, in this case, to the effect that the two acts mentioned, having been passed at the same session of the Legislature, and both comprehending the matter of authority in the county board of school trustees to change boundary lines of common school districts, should be construed together as being supplementary to each other in the last-named respect. So construing said acts together leads to the conclusion that the Legislature intended the provision for notice and hearing, contained in section 2 of House Bill 220, to operate as a limitation of the authority conferred on the county board by the other act, so far as a change in the boundary lines of a common school district is involved. Compliance with said provision was prerequisite to the exercise by the county board of school trustees of Young County, of authority to change the boundary lines of the Bullock Common School District, and, since there was no such compliance, the order for such change was unauthorized and therefore is invalid."

In view of the fact that this case decides this question directly and is the latest authority, we will not review the various other cases that deal with these statutes and touch this question indirectly, because we have the same feeling about these cases, as well as all school law cases in general, that Justice Walthall had in the case of Saragosa Independent School District vs. County Trustees of Reeves County, 53 S. W. (2d) 1028, when he said:

. "We think it would be more confusing than enlightening to review the several holdings of the courts . . ."

Honorable Chas. E. Reagan, Page 6


        In the question before us the County Board of
School Trustees of Falls County had no authority to change
the boundary lines between the two common school districts
involved except in the manner prescribed by statute. There-
fore, our answer to your question is that according to the
facts given us the boundary line under the field notes of
1895 is the correct boundary line between the two districts.


                              Yours very truly

                         ATTORNEY GENERAL OF TEXAS

                    By
                              Cecil C. Rotsch
                              Assistant

CCR:FG


APPROVED Aug. 7, 1939

GERALD C. MANN
ATTORNEY GENERAL OF TEXAS


Approved:
OPINION COMMITTEE
By RWF, Chairman